984 So.2d 1269 (2008)
Dean Joseph JOSLIN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 2D06-4521, 2D07-3585.
District Court of Appeal of Florida, Second District.
June 27, 2008.
*1270 James Marion Moorman, Public Defender, and Tosha Cohen, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Chandra Waite Dasrat, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
In case number 2D06-4521, Dean Joslin seeks review of the trial court's order revoking his probation. In case number 2D07-3585, Joslin seeks review of the order modifying his probation conditions, which was rendered after the trial court granted relief pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). Joslin's only argument on appeal pertains to the revocation of his probation in case number 2D06-4521. We reverse the revocation order because the court found a violation based on conduct not alleged in the affidavit of violation of probation and the evidence was not sufficient to support the court's finding of a second violation.
In June 1995, Joslin entered no contest pleas to two counts of lewd, lascivious, or indecent assault or act on or in the presence of a child. Joslin was ultimately sentenced to twelve years in prison, suspended after seven years with five years of probation. Sometime in early 2004, Joslin filed a pro se motion to clarify his probation. In May 2004, the court rendered an order clarifying Joslin's probation. That order stated that Joslin was to have "no unsupervised contact with children under the age of eighteen (18) years without adult supervision."
Joslin was subsequently charged with violating his probation by having unsupervised contact with his seventeen-year-old nephew. Joslin admitted to the violation, and the court reinstated his probation. At the hearing on the violation, Joslin asked the court if the terms of his probation prohibited him from residing with his girlfriend and her toddler nephew, Zack, who were present at the hearing. The court acknowledged that Joslin was not prohibited from residing with a minor but reminded Joslin that he was prohibited from having unsupervised contact with minors. The court also advised Joslin's girlfriend that Joslin was not to be left alone with the child.
On March 28, 2006, Joslin was charged with three violations of his probation. The corrected affidavit of violation of probation alleged that Joslin violated the condition prohibiting unsupervised contact with minors by (1) living with a five-year-old child named Zack and (2) having two children under eighteen, Timothy and Tiffany, spend the night on or about March 10-12, 2005,[1] without knowledge or consent of his probation officer. The affidavit also alleged that Joslin violated condition ten of his probation by erroneously informing his probation officer that he went to court and got permission to reside with a child under eighteen.
At the probation revocation hearing, Joslin's probation officer, William Roberts, testified that he instructed Joslin that he was not supposed to have unsupervised contact with minors as a condition of his probation. When Roberts discovered that a minor was living in the house with Joslin, he confronted Joslin. Joslin told Roberts that he had permission from the court to *1271 reside with the minor. Joslin also told the probation officer that his girlfriend's children, Timothy and Tiffany, had stayed at the house from March 10-12, 2006. Roberts acknowledged that he had no evidence of unsupervised contact with any of the minors, but Roberts was under the impression that Joslin was not permitted to live with a minor.
Roberts testified that Evelyn Brewer and others from Joslin's neighborhood called him to find out why Joslin was allowed to live in their neighborhood. Brewer also called the supervisor of the probation program several times to complain about Joslin. Brewer apparently was hoping that the fact that she ran a daycare in the area would be enough to restrict Joslin from living there. Another neighbor who called Roberts was Denise Dunlap. Dunlap also contacted a supervisor about Joslin.
Evelyn Brewer testified that she became aware that Joslin had a conviction for a sexual offense after he moved into the house next door. She could not recall calling the probation office but thought it was possible that she did so. Brewer testified that "[o]ne time" she saw Joslin in his backyard with a preschool age boy. She could not recall the date or even the month that this happened. Joslin was picking up sticks or something similar off the ground at the time. She did not see any other adults in the area, but she could not see the west side of the yard.
Brewer also saw Joslin standing by his garage with three teenagers one time. She did not see any other adults present from her location at the window. However, she could not see the west portion of the yard. She could not recall when this happened.
Lanny Dunlap testified that he lives across the street behind Joslin's house. His front window is 200 feet from the back of Joslin's house. Dunlap testified that he saw Joslin in Joslin's backyard with a preschool age child twice. Dunlap could not be sure there were no other adults present because the entire yard was not visible from his house. Dunlap could not recall when he first observed Joslin with the child, but it was in the spring of 2006. On the second occasion, Dunlap drove past and saw Joslin with a young child in the backyard. While Dunlap did not notice any adults in the vicinity, he also did not look in the pool area to see if anyone was there.
Denise Dunlap, Mr. Dunlap's wife, testified that a neighbor down the street told her about Joslin. She also runs a home daycare, and she was very concerned about Joslin. She called the probation office to see what could be done about the situation. One day, Mrs. Dunlap saw Joslin in the backyard with a child. She could not recall exactly where she was standing or what day it was. Mrs. Dunlap testified that there were no other adults in sight but admitted that there was a building, a fence, and weeds obstructing her view.
Mrs. Dunlap also testified regarding a party at Joslin's house that a couple of preteen children and several adults attended. After the party, Mrs. Dunlap saw Joslin standing with the children outside by the driveway. The driveway is on the side of Joslin's house a few feet from the pool area. Mrs. Dunlap did not see any other adults around, but she could not see if anyone was in the pool area.
The trial court found that Joslin (1) violated the condition prohibiting unsupervised contact with minors by having unsupervised contact with Zack and (2) violated condition ten by informing his probation officer that he had permission to reside with a minor but failing to inform the officer that the contact was required to be *1272 supervised. The court did not find a violation based on unsupervised contact with Timothy or Tiffany. The court ordered Joslin to serve 2.5 years in prison followed by 2.5 more years of probation.
On appeal, Joslin argues that (1) the affidavit did not effectively allege a violation of probation for having unsupervised contact with Zack, (2) the court found a violation of condition ten based on conduct not alleged in the affidavit of violation of probation, and (3) the evidence was not sufficient to support the court's finding that he had unsupervised contact with Zack. In his first argument, Joslin claims that the affidavit did not effectively allege a violation of probation because it alleged that he violated the prohibition against unsupervised contact with a minor but did not allege that he was unsupervised at any time when he shared a home with Zack. However, Joslin did not object or move to dismiss on this basis. In fact, defense counsel "assumed" the allegation at issue concerned unsupervised contact when he made his argument that the evidence did not support a violation of that condition. Thus, Joslin has not preserved this issue for review.
In Joslin's second argument, he claims that the court found a violation of condition ten based on conduct not alleged in the affidavit of violation of probation. The court found that Joslin violated condition ten of his probation by informing his probation officer that he had permission to reside with a minor but failing to inform the officer that the contact was required to be supervised. While it may be true that Joslin did not inform his probation officer about this limitation on his contact with Zack, this omission was not alleged in the affidavit of violation of probation. The affidavit alleged that Joslin violated condition ten of his probation by erroneously informing his probation officer that he went to court and got permission to reside with a child under eighteen. It is not proper for a court to find a violation based on conduct not alleged in the affidavit of violation of probation. Grimsley v. State, 830 So.2d 118, 120 (Fla. 2d DCA 2002); Parminter v. State, 762 So.2d 966, 967 (Fla. 2d DCA 2000). Thus, the court erred in finding a violation on this basis.
In Joslin's third argument, he claims that the evidence was not sufficient to support the court's finding that he had unsupervised contact with Zack. We agree. While three witnesses testified that they saw Joslin in his backyard with a young boy on various occasions, none of these witnesses could say that Joslin and the boy were unsupervised. That is, not one of the witnesses had an unobstructed view of the backyard. Accordingly, the evidence did not support the court's finding that Joslin violated his probation by having unsupervised contact with Zack.
Reversed.
WALLACE, J., Concurs.
VILLANTI, J., Concurs in result only.
VILLANTI, Judge, Concurring.
I agree with the majority that the revocation of Joslin's probation must be reversed, but I write separately because I disagree with the majority's reason for this outcome.
As the majority points out, Joslin was prohibited by trial court order from having unsupervised contact with a minor. When Joslin asked the court whether he was prohibited from living with his girlfriend's five-year-old nephew, Zack, the court said no but reminded Joslin that he was not to have unsupervised contact with Zack. However, the corrected affidavit of violation of probation alleged that Joslin violated his probation simply by "RESIDING *1273 with a 5 year old child by the name of Zack" and not that there was any unsupervised contact.
After the presentation of evidence at the revocation of probation hearing, Joslin's counsel argued against the trial court finding any violation of Joslin's probation based solely on his contact with Zack, arguing that the State had failed to prove that "any violation occurred at all involving Mr. Joslin." Joslin's counsel then argued that the affidavit did not allege a violation, stating, "the affidavit still says the violation is because Mr. Joslin was residing and, therefore, assuming that he was having unsupervised contact with minors." (Emphasis added.) In my view, this argument is sufficient to put the trial court on notice that Joslin was contending that the written affidavit did not allege a violation of his probation. Because I believe that this argument was sufficient to preserve the issue, I would reverse on this basis. Moreover, even if this argument was legally insufficient to preserve the issue, I would still reverse on this basis because revocation of probation based on conduct not alleged in the affidavit of violation of probation constitutes fundamental error that can be raised for the first time on appeal. See, e.g., DeJesus v. State, 848 So.2d 1276, 1278 (Fla. 2d DCA 2003) (holding that "`[r]evocation of probation on grounds never alleged in writing violates due process and is fundamental error'") (quoting Smith v. State, 738 So.2d 433, 435 (Fla. 1st DCA 1999)); Ray v. State, 855 So.2d 1260, 1261 (Fla. 4th DCA 2003); Richardson v. State, 694 So.2d 147, 147 (Fla. 1st DCA 1997).
I point out, however, that had the affidavit alleged that Joslin had unsupervised contact with Zack, I would have been inclined to affirm the revocation even though the evidence did not conclusively establish that an adult was not supervising Joslin from the house or a part of the yard not visible to the witnesses. The State is not required in a probation violation case to put on conclusive evidence that a violation occurred; it must only establish by the greater weight of the evidence that a willful, material violation occurred. Further, "[o]n appeal from the trial court's decision on the issue [of revocation of probation], the standard of review is abuse of discretion. That is, the appellate court must determine whether or not the trial court acted in an arbitrary, fanciful or unreasonable manner in determining that [a] violation was both willful and substantial." State v. Carter, 835 So.2d 259, 262 (Fla. 2002) (citations omitted). Given the State's lessened burden of proof and the deference due to the trial court's decision, I would have affirmed the revocation in this case had the affidavit charged unsupervised contact.
Finally, I believe that this case stands as a cautionary tale for trial courts that may be inclined to permit sex offenders to live with designated minors. I note that section 948.30(1)(e), Florida Statutes (2007), which was not in effect when Joslin committed his crimes, now sets forth detailed requirements before any contact between convicted sex offenders and minors may occur. Since no sex offender is entitled to have contact with a minor as a matter of right, a trial court granting such contact should consider setting forth detailed parameters concerning that contact, whether or not the new statute applies, especially including the physical distance within which the responsible supervising adult must be when a sex offender is in the presence of a minor. As this case demonstrates, proof of a violation of a nebulous condition of probation is difficult to establish not only for the probation officer, but also for the prosecutor and judge. Thus, even though the nebulous conditions of probation that allowed sex offenders to *1274 have certain types of contact with minors in the past have now largely been eliminated by statute, there is still reason for the trial court to provide the greatest guidance possible when permitting such contact.
NOTES
[1] The State orally amended these dates to March 10-12, 2006, at the revocation hearing.